# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1493 |
| COMPLETE TITLE: | The Segregated Account of Ambac Assurance Corporation (the "Segregated Account") and Ambac Assurance Corporation ("Ambac"), <br>    Plaintiffs-Appellants, <br>     v. <br> Countrywide Home Loans, Inc., <br>    Defendant-Respondent-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 370 Wis. 2d 788, 882 N.W.2d 871
(2016 – Unpublished)

| | |
|---|---|
| OPINION FILED: | June 30, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 28, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Peter Anderson |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A.W. BRADLEY, J. dissents, joined by ABRAHAMSON, J. (opinion filed). |
| NOT PARTICIPATING: | KELLY, J. did not participate. |

ATTORNEYS:

   For the defendant-respondent-petitioner, there were briefs filed by *Thomas M. Pyper, Lisa M. Lawless,* and *Husch Blackwell LLP,* Madison, with whom on the briefs were *Joseph M. McLaughlin* and *Simpson Thacher & Bartlett LLP*, New York. Oral argument by *Joseph M. McLaughlin.*

   For the plaintiffs-appellants, there was a brief filed by *Erik H. Monson, Karen M. Gallagher,* and *Coyne, Schultz, Becker & Bauer, S.C.,* Madison, with whom on the brief were *Barbara A. Neider, Jeffrey A. Mandell,* and *Stafford Rosenbaum LLP,* Madison. Oral argument by *Barbara A. Neider.*

An amicus curiae brief was filed on behalf of Civil Procedure Law Professors by *John Franke* and *Gass Weber Mullins LLC.* Oral argument by *John Franke.*

An amicus curiae brief was filed on behalf of Wisconsin Manufacturers and Commerce Association and The Chamber of Commerce of the United States of America by *Kevin M. St. John* and *Bell Giftos St. John LLC*, Madison, with whom on the brief were *Daniel Domenico* and *Kittredge LLC*, Denver.

An amicus curiae brief was filed on behalf of The Coalition for Litigation Justice by *Kathryn A. Keppel* and *Gimbel, Reilly, Guerin & Brown LLP*, Milwaukee.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP1493
(L.C. No. 2014CV3511)

STATE OF WISCONSIN      :      IN SUPREME COURT

The Segregated Account of Ambac Assurance
Corporation (the "Segregated Account") and
Ambac Assurance Corporation ("Ambac"),

      Plaintiffs-Appellants,

  v.

Countrywide Home Loans, Inc. ("Countrywide"),

      Defendant-Respondent-Petitioner.

**FILED**

**JUN 30, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1    REBECCA GRASSL BRADLEY, J.    This case implicates the authority of Wisconsin courts to exercise general jurisdiction over a foreign corporation.  Countrywide Home Loans, Inc. petitioned this court for review of an unpublished decision of the court of appeals,[1] which held that Countrywide consented to general personal jurisdiction in Wisconsin when it appointed a

---

    [1] Segregated Account of Ambac Assurance Corp. v. Countrywide Home Loans, Inc., No. 2015AP1493, unpublished slip op. (Wis. Ct. App. June 23, 2016) (per curiam).

registered agent pursuant to Wis. Stat. § 180.1507 (2015-16).[2] Because the text of § 180.1507 does not even mention jurisdiction, much less consent, Countrywide's compliance with the statute does not, on its own, confer jurisdiction. We therefore hold that compliance with § 180.1507 does not subject Countrywide to general jurisdiction in Wisconsin; accordingly, we reverse the decision of the court of appeals and remand the matter to the court of appeals for further proceedings consistent with this opinion.[3]

## I. BACKGROUND

¶2 Countrywide is a New York corporation with its principal place of business in California. Prior to the Great Recession, Countrywide was a leading home mortgage loan insurer, but its home mortgage activity ended after the housing market collapsed. Authorized to do business in Wisconsin since 1986, Countrywide appointed CT Corporation System, a Wisconsin corporation, as its registered agent for service of process in

---

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

[3] In the court of appeals, Ambac and the Segregated Account raised two additional issues: (1) whether Countrywide consented to personal jurisdiction by appearing in rehabilitation proceedings in Wisconsin; and (2) whether Countrywide is subject to personal jurisdiction under Wisconsin's long-arm statute, Wis. Stat. § 801.05(1). The court of appeals did not address these other issues because it reversed the circuit court's decision based on the consent to general jurisdiction argument raised by Ambac and the Segregated Account. Consequently, we remand the matter so the court of appeals can decide these unresolved issues.

2014. Prior to commencement of this action, Countrywide did not maintain any offices, employees, or business presence within the state.

¶3 Ambac Assurance Corporation is a Wisconsin corporation with its principal place of business in New York. As an insurer of financial instruments, Ambac issued polices in 2005 insuring against losses stemming from residential mortgage-backed securities containing Countrywide mortgage loans. Neither the policies nor the contracts were negotiated in Wisconsin, but the underlying securities did include mortgage loans made to Wisconsin residents and secured by property here. When many of the mortgage loans underlying the securities defaulted during the Great Recession, the policies obligated Ambac to pay claims worth hundreds of millions of dollars. Because of Ambac's significant liabilities under the policies, the Wisconsin Commissioner of Insurance approved a plan in March 2010 establishing the Segregated Account of Ambac Assurance Corporation. Ambac transferred its policies into the Segregated Account, which now owns the policies. The Segregated Account entered statutory rehabilitation pursuant to Wis. Stat. §§ 645.31-32,[4] and rehabilitation proceedings remain ongoing.[5]

---

[4] For helpful background on rehabilitation proceedings, see generally Nickel v. Wells Fargo Bank, 2013 WI App 129, ¶¶12-15, 351 Wis. 2d 539, 841 N.W.2d 482.

[5] In re Rehabilitation of Segregated Account of Ambac Assurance Corp., No. 2010CV1576 (Dane Cty. Cir. Ct.). Appeals related to the rehabilitation proceedings have generated published opinions by this court and the court of appeals. In

(continued)

3

¶4 Ambac and the Segregated Account[6] filed this suit against Countrywide in December 2014 and served CT Corporation System with the summons and complaint in January 2015. The complaint alleged that Ambac incurred substantial liability under the insurance policies only because Countrywide fraudulently misrepresented the quality of the mortgages underlying the securities.[7] Countrywide moved to dismiss the complaint for lack of personal jurisdiction. Ambac opposed the motion, arguing that Countrywide consented to general jurisdiction in Wisconsin when it appointed a registered agent under Wis. Stat. §§ 180.1507 and 180.1510.

¶5 Dismissing the complaint for lack of personal jurisdiction, the Dane County Circuit Court[8] concluded that Wisconsin courts cannot exercise general jurisdiction over Countrywide.[9] The circuit court reasoned that "merely having a

---

re Rehabilitation of Segregated Account of Ambac Assurance Corp., 2012 WI 22, 339 Wis. 2d 48, 810 N.W.2d 450; Nickel, 351 Wis. 2d 539.

[6] To facilitate readability, we will refer to Ambac and the Segregated Account collectively as "Ambac" for the remainder of the opinion.

[7] Ambac also filed suit against Countrywide in New York for alleged fraudulent representations regarding residential mortgage-backed securities.

[8] The Honorable Peter C. Anderson presiding.

[9] The circuit court also rejected Ambac's arguments that Countrywide consented to personal jurisdiction by appearing in the rehabilitation proceedings and that Wisconsin's long-arm statute, Wis. Stat. § 801.05(1), allowed the court to exercise specific jurisdiction over Countrywide.

registered agent and merely having . . . one or two foreclosure actions [does] not make you a resident of this state in the same sense that [anyone] . . . from Wisconsin could be sued in Wisconsin and could not be heard to complain." Absent explicit contractual consent, the court determined that "the registered agent and the very modest participation in foreclosure proceedings at the time of the filing . . . would not sustain jurisdiction under [Daimler AG v. Bauman, 134 S. Ct. 746 (2014)]."

¶6 Ambac appealed, and the court of appeals reversed. Segregated Account of Ambac Assurance Corp. v. Countrywide Home Loans, Inc., No. 2015AP1493, unpublished slip op. (Wis. Ct. App. June 23, 2016) (per curiam). Quoting language from this court's decisions in Punke v. Brody, 17 Wis. 2d 9, 115 N.W.2d 601 (1962), and Hasley v. Black, Sivalls & Bryson, Inc., 70 Wis. 2d 562, 235 N.W.2d 446 (1975), the court of appeals held that appointing a registered agent for service of process constituted consent to general jurisdiction in Wisconsin. Segregated Account, unpublished slip op., ¶¶11-13. It therefore agreed with Ambac that, "by maintaining a Wisconsin agent to receive service of process . . . , Countrywide 'subjected' itself to the 'general jurisdiction' of Wisconsin courts, and actually consented to personal jurisdiction." Id., ¶9. The court of appeals rejected Countrywide's argument that the Supreme Court's Daimler decision either directly or indirectly undermined Punke and Hasley. Id., ¶¶18-20. Countrywide filed a petition for review, which we granted.

5

## II.    STANDARD OF REVIEW

¶7    Whether Wisconsin courts have personal jurisdiction over a foreign corporation is a question of law we review de novo, although we benefit from the analyses of the circuit court and court of appeals.    Rasmussen v. Gen. Motors Corp., 2011 WI 52, ¶14, 335 Wis. 2d 1, 803 N.W.2d 623 (first citing Kopke v. A. Hartrodt S.R.L., 2001 WI 99, ¶10, 245 Wis. 2d 396, 629 N.W.2d 662; then citing State v. Aufderhaar, 2005 WI 108, ¶10, 283 Wis. 2d 336, 700 N.W.2d 4).

## III.    DISCUSSION

### A.    Personal Jurisdiction over Corporations

¶8    A brief review of personal jurisdiction doctrine places our statutory interpretation question in the appropriate context.    Shortly after the adoption of the Fourteenth Amendment to the United States Constitution, the Supreme Court decided Pennoyer v. Neff, 95 U.S. 714 (1878), which tied personal jurisdiction to a defendant's presence within the forum state. At the time, service of process on a defendant within the forum cemented personal jurisdiction.    Id. at 722-24.    This territorial approach, however, limited jurisdiction over corporations; because corporations were not people, their "presence" within a forum state was statutorily defined by the legislature.    In most forums, corporations were subject to suit only if incorporated in that state.    Cf. State ex rel. Drake v. Doyle, 40 Wis. 175, 197 (1876) ("The corporation, being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created." (quoting Paul v.

6

*Virginia*, 75 U.S. (8 Wall.) 168, (1869))); see also Bank of Augusta v. Earle, 38 U.S. (13 Pet.) 519, 588 (1839) ("[A] corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law, and by force of the law; and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence.").

¶9 Consequently, foreign corporations could be immune from suit, even if they carried out significant operations within a state. Registration statutes thus arose in part to permit the exercise of jurisdiction over foreign corporations. See Morris & Co. v. Skandinavia Ins. Co., 279 U.S. 405, 408-09 (1929) ("The purpose of state statutes requiring the appointment by foreign corporations of agents upon whom process may be served is primarily to subject them to the jurisdiction of local courts in controversies growing out of transactions within the State."). The corporation's in-state agent satisfied Pennoyer's local presence requirement, and some courts discovered an implicit "consent" to personal jurisdiction within the appointment of the agent. See Burnham v. Super. Ct. of Cal., 495 U.S. 604, 617-18 (1990) (plurality).

¶10 In 1945, however, the Supreme Court decided International Shoe Co. v. Washington, 326 U.S. 310 (1945), dispensed with the "purely fictional" notions of implied consent and presence-by-agent, and redirected personal jurisdiction doctrine away from the territorial approach that prevailed under Pennoyer. Burnham, 495 U.S. at 618 (plurality). Two categories

7

of personal jurisdiction have emerged since then. A corporation may be subject to personal jurisdiction in a forum state under a theory of "specific jurisdiction" if it has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Exercise of specific jurisdiction requires a nexus between the defendant's activities in the state and the suit against it. Availability of specific jurisdiction obviates the need for states to use registration statutes to secure personal jurisdiction over foreign corporations' activities.

¶11 By contrast, a state may exercise "general jurisdiction" over a corporation if its "continuous corporate operations within [the] state [are] . . . so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Id. at 318; see also Helicopteros Nacionales de Colum., S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). If a defendant is subject to general jurisdiction in a forum, it may be sued there even in the absence of any relationship between the litigation and the defendant's contacts with the state. In recent years, the Supreme Court clarified the limits the Fourteenth Amendment's Due Process Clause places on the scope of general jurisdiction: "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous

and systematic' as to render them essentially <u>at home</u> in the forum State." <u>Daimler</u>, 134 S. Ct. at 754 (alteration omitted; emphasis added) (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011)). Critically, a corporation's "in-state business" sufficient to support a forum state's exercise of specific personal jurisdiction "does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in" the forum state. <u>BNSF Ry. Co. v. Tyrrell</u>, 137 S. Ct. 1549, 1559 (2017).

¶12 "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction'" because they are "unique" and "easily ascertainable." <u>Daimler</u>, 134 S. Ct. at 760 (alterations in original) (quoting <u>Goodyear</u>, 564 U.S. at 924). In corralling "exorbitant exercises of all-purpose jurisdiction," the Supreme Court recognized the value in having a "clear and certain forum in which a corporate defendant may be sued on any and all claims." <u>Id.</u> at 760-61. Identifying "at least one" definite forum where corporate defendants are subject to general jurisdiction benefits plaintiffs but also enables defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." <u>Id.</u> at 760-62 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985)).

9

B. Appointment of a Registered Agent in Wisconsin

¶13 The question before this court is whether compliance with Wis. Stat. § 180.1507, without more, constitutes consent to general jurisdiction in Wisconsin. Interpretation of this statute is a matter of first impression. As always, "statutory interpretation begins with the language of the statute." State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 663, 681 N.W.2d 110, 124 (internal quotation mark omitted) (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). We give statutory text its "common, ordinary, and accepted meaning." Id. Because both context and structure are "important to meaning," we interpret statutory text "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46.

¶14 To conduct business in Wisconsin, foreign corporations must comply with certain registration and appointment requirements. Among other conditions found in Chapter 180, Wis. Stat. § 180.1507 requires that "[e]ach foreign corporation authorized to transact business in this state shall continuously maintain in this state a registered office and registered agent."[10] Ambac now argues that appointment of a registered agent under § 180.1507 amounts to consent to general

_____

[10] Wisconsin Stat. § 180.1507 also specifies characteristics of permissible registered agents, which we need not reproduce.

10

jurisdiction.   In support of its position, Ambac points out that Wis.   Stat.   § 180.1510(1)   designates   a   foreign   corporation's registered   agent   as   the   corporation's   agent   for   service   of process.[11]

¶15  We  disagree  with  Ambac's  interpretation.   Consent  to general jurisdiction cannot be read into Wis. Stat. §§ 180.1507 and 180.1510 without "expand[ing] the meaning of the statute[s] to  the  point  that  we  engage  in  rewriting  the  statute[s],  not merely  interpreting  [them]."  State v. Briggs,  214  Wis. 2d  281, 288,  571  N.W.2d  881  (Ct. App. 1997).   We  will  not  rewrite  the statute  to  create  jurisdiction  where  the  legislature  has  not. The  text  of  Wis.  Stat.  § 180.1507  is  devoid  of  any  language regarding  either  consent  or  jurisdiction.    Section 180.1507 merely  requires  that  every  foreign  corporation  authorized  to  do business   in   Wisconsin   maintain   a   registered   office   and registered  agent  in  the  state.  Subsections (1) through (3) then describe   the   persons   and   entities   eligible   to   serve   as registered agents.  The language is straightforward, and none of the words——independently or taken together——suggest consent to jurisdiction.[12]   Because  Chapter  180  in  no  way  telegraphs  that

---

[11] Wisconsin Stat. § 180.1510(1) provides, in full:  "Except as provided in subs. (2) and (3), the registered agent of a foreign  corporation  authorized  to  transact  business  in  this state is the foreign corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation."

[12] Because  the  meaning  of  Wis.  Stat.  §§ 180.1507  and 180.1510 is clear, we do not consider the legislative history and model act materials that Ambac brings to our attention.

11

registration equals consent to general jurisdiction, a foreign corporation would be understandably surprised to learn, perhaps before it even conducts any business here, that registration automatically subjects it to being hauled into a Wisconsin court in a case having no connection whatsoever to Wisconsin.

¶16 Wisconsin Stat. § 180.1510(1) does mention "service of process"——a term generally associated with the initiation of a lawsuit——but service of process is an act distinct from the grounds necessary to confer general jurisdiction.[13] A registered agent's role is to receive service of process, notice, or demand on behalf of a foreign corporation, and the agent's mere receipt of process does not empower Wisconsin courts to exercise either specific or general personal jurisdiction without compromising the due process rights of the foreign corporation. The fact that Wis. Stat. § 180.1510(1) assigns the registered agent responsibility to receive process therefore cannot transform appointment of an agent under Wis. Stat. § 180.1507 into consent to general jurisdiction. To conclude differently would resurrect the "purely fictional" notions of "implied consent" and "presence" associated with designated agents during a bygone era when foreign corporations would otherwise elude justice in proper forums. That period of time has passed, and those

---

[13] See Wis. Stat. § 801.11 (grounds for personal jurisdiction are a prerequisite to its exercise, implying that the basis for personal jurisdiction over a foreign corporation exists independently from the means by which the plaintiff effects service).

defunct concepts were appropriately discarded, having been superseded by long-arm statutes.

¶17 Adopting Ambac's interpretation of Wis. Stat. §§ 180.1507 and 180.1510(1) as effecting consent to general jurisdiction would render Wisconsin's long-arm statute superfluous with respect to all foreign corporations authorized to transact business in this state——the very entities the long-arm statute was designed to reach:

> [T]he objective of the statute was to give citizens of Wisconsin the right to make use of the courts of this state in instituting causes of action against any foreign corporation, which actually is carrying on business activities within the state, subject only to such limitations as are imposed by the United States constitution.

Vt. Yogurt Co. v. Blanke Baer Fruit & Flavor Co., 107 Wis. 2d 603, 609-10, 321 N.W.2d 315 (Ct. App. 1982) (emphasis added; original emphasis omitted) (quoting Huck v. Chi., St. Paul, Minneapolis & Omaha Ry., 4 Wis. 2d 132, 137, 90 N.W.2d 154 (1958)). In interpreting the scope of the long-arm statute, Wisconsin courts have long recognized that "[t]his state does not have the same interest in providing a forum for nonresidents whose injuries by nonresidents have no connection to this state as it does in protecting its residents from nonresidents doing business here." Id. at 612 (emphasis added). The long-arm statute reaches foreign corporations doing business in Wisconsin, which are required to register an agent for service of process. If such registration were sufficient to expose foreign corporations to general, all-purpose jurisdiction

13

of Wisconsin courts, the long-arm statute would effectively serve no purpose. "Statutory interpretations that render provisions meaningless should be avoided." Belding v. Demoulin, 2014 WI 8, ¶17, 352 Wis. 2d 359, 843 N.W.2d 373; accord Kalal, 271 Wis. 2d 633, ¶46; State ex rel. Smith v. City of Oak Creek, 139 Wis. 2d 788, 796, 407 N.W.2d 901 (1987); Harrington v. Smith, 28 Wis. 43, 67 (1871); see also Antonin Scalia & Bryan A. Garner, Reading Law 174-79 (2012) ("[A statute] should [not] needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.").

¶18 Wisconsin Stat. § 801.05(1)(d) gives Wisconsin courts personal jurisdiction over a defendant "engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." But if we equate appointment of a registered agent under Wis. Stat. § 180.1507 with consent to general jurisdiction, Wisconsin courts would not need to establish grounds for specific jurisdiction under Wis. Stat. § 801.05(1)(d), except with respect to foreign corporations prohibited from transacting business in this state under Wis. Stat. § 180.1501——entities the long-arm statute is unlikely to reach.[14] A foreign corporation's

---

[14] See, e.g., Rasmussen v. Gen. Motors. Corp., 2011 WI 52, ¶44, 335 Wis. 2d 1, 803 N.W.2d 623 (declining to impute subsidiary's substantial and not isolated activities in Wisconsin to foreign parent company); Vt. Yogurt Co. v. Blanke Baer Fruit & Flavor Co., 107 Wis. 2d 603, 605-06, 613, 321 N.W.2d 315 (Ct. App. 1982) (declining to exercise jurisdiction over defendant where "the dispute between the parties had [no] connection to this state" and defendant was "not licensed to do

(continued)

14

contacts with Wisconsin would be irrelevant so long as it registered an agent for service of process——which all foreign corporations authorized to transact business in this state must do.[15]  We will not interpret Wis. Stat. §§ 180.1507 and 180.1510(1) in a manner that makes the long-arm statute "idle and nugatory."  Scalia & Garner, supra, at 174 (internal quotation mark omitted) (quoting Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest upon the Legislative Power of the States of the American Union 58 (1868)).[16]

---

business in Wisconsin").  But see, e.g., Capitol Fixture & Woodworking Grp. v. Woodma Distribs., Inc., 147 Wis. 2d 157, 159-63, 432 N.W.2d 647 (Ct. App. 1988) (holding that Wis. Stat. § 801.05(5)(e), which confers jurisdiction in any action that relates to goods received by plaintiff in Wisconsin from defendant, conferred jurisdiction over defendant, despite argument that Wisconsin lacked jurisdiction under Wis. Stat. § 801.05(1)(d) because defendant was "not licensed to do business in Wisconsin").

[15] See Brown v. Lockheed Martin Corp., 814 F.3d 619, 636 (2d Cir. 2016) ("[I]f the mere maintenance of a registered agent to accept service under [Connecticut's registration statute] effected an agreement to submit to general jurisdiction, it seems to us that the specific jurisdiction provisions of the long-arm statute . . . wouldn't be needed except with regard to unregistered corporations:  Registered corporations would be subject to jurisdiction with regard to all matters simply by virtue of process duly served on its appointed agent.").

[16] We also recognize the perverse incentive created by reading consent into the registered agent statute.  A foreign corporation could elect non-compliance with Chapter 180 in order to evade the general jurisdiction of Wisconsin courts, while a fully compliant foreign corporation would expose itself to suits having nothing whatsoever to do with Wisconsin.  If registering an agent for service of process is tantamount to consent to general, all-purpose jurisdiction, foreign corporations that
(continued)

15

¶19 Ambac also relies on Wis. Stat. § 180.1505(2), under which a corporation certified to do business in Wisconsin "has the same but no greater rights and has the same but no greater privileges as, and . . . is subject to the same duties, restrictions, penalties and liabilities . . . imposed on, a domestic corporation of like character." Ambac argues that because foreign corporations "enjoy[] the privilege of using the Wisconsin courts and [are] placed on <u>equal footing</u> with domestic companies," § 180.1505(2) operates with Wis. Stat. §§ 180.1507 and 180.1510(1) to imply that certified foreign corporations consent to personal jurisdiction in Wisconsin for any claim, regardless of the claim's relationship to the state.

¶20 Once again, Ambac disengages from the plain language of Chapter 180. Like Wis. Stat. §§ 180.1507 and 180.1510(1), Wis. Stat. § 180.1505(2) mentions neither consent nor jurisdiction; thus, its plain language undermines Ambac's argument.[17] It is too great a leap to characterize consent to

---

comply with our laws would be penalized for doing so. <u>See</u> <u>Genuine Parts Co. v. Cepec</u>, 137 A.3d 123, 140-41 (Del. 2016).

[17] Because the dissent faults our discussion of Wis. Stat. § 180.1507 in conjunction with Wis. Stat. §§ 180.1510(1), 180.1505(2), and 801.05(1)(d) for purportedly "employ[ing] a misguided framework of statutory interpretation" that places § 180.1507 "in isolation from the wider embrace of the statutory scheme," dissent, ¶36, we pause to note the appropriate role of the "whole-text" canon for using context to assess the meaning of statutory language:

Properly applied, it typically establishes that only one of the possible meanings that a word or phrase can

(continued)

16

general jurisdiction as a "duty" imposed on every foreign corporation that registers to do business in Wisconsin, particularly where the actual statutory language offers no warning that exposure to suits in Wisconsin for claims arising elsewhere is a consequence of registration.

¶21 Treating general jurisdiction as a "duty" of domestic corporations that extends to <u>all</u> registered foreign corporations by default would extend Wisconsin's exercise of general jurisdiction beyond the tapered limits recently described by the Supreme Court. Because the Due Process Clause of the Fourteenth Amendment controls the circumstances under which a state may exercise personal jurisdiction, we must consider the due process implications of exercising jurisdiction over a foreign corporation. This court generally avoids interpreting statutes in a way that places their constitutionality in question. <u>Blake v. Jossart</u>, 2016 WI 57, ¶27, 370 Wis. 2d 1, 884 N.W.2d 484

---

bear is compatible with use of the same word or phrase elsewhere in the statute; or that one of the possible meanings would cause the provision to clash with another portion of the statute. It is not a proper use of the canon to say that since the overall purpose of the statute is to achieve <u>x</u>, any interpretation of the text that limits the achieving of <u>x</u> must be disfavored. . . . [L]imitations on a statute's reach are as much a part of the statutory purpose as specifications of what is to be done.

Antonin Scalia & Bryan A. Garner, <u>Reading Law</u> 168 (2012). As we have made clear, there is no ambiguity of meaning for context to clarify in Wis. Stat. § 180.1507 because that section mentions neither consent nor jurisdiction, and we will not concoct meaning from "context" where the legislature has not spoken.

17

("[I]f any doubt exists about the statute's constitutionality, the court must resolve that doubt in favor of upholding the statute." (citations omitted)), cert. denied, 137 S. Ct. 669 (2017); accord State ex rel. Hammermill Paper Co. v. La Plante, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973); see also Scalia & Garner, supra, at 247-51 ("A statute should be interpreted in a way that avoids placing its constitutionality in doubt.").

¶22  In Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011), the Supreme Court addressed the proper scope of general jurisdiction within the bounds of due process, holding that a corporation may be subject to general jurisdiction only in a forum where it "is fairly regarded as at home."  Id. at 924.  In Daimler, the Court later clarified the circumstances under which a corporation has sufficiently continuous and systematic contacts to be "at home" in a forum state.  Rather than focusing "solely on the magnitude of the defendant's in-state contacts," a court must conduct "an appraisal of a corporation's activities in their entirety, nationwide and worldwide," because "[a] corporation that operates in many places can scarcely be deemed at home in all of them."  134 S. Ct. at 762 n.20 (quoting id. at 767 (Sotomayor, J., concurring)).  A forum state denies defendants due process of law if it "subject[s] foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate."  Id. at 759-60.  Within this framework, the Daimler Court explained that "Goodyear did not hold that a corporation may be subject to general jurisdiction only in a forum where it

18

is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums."  Id. at 760.

¶23 Courts in other jurisdictions have recognized that Goodyear and Daimler strictly confine the exercise of general jurisdiction over foreign corporations within the bounds of due process.  In a comprehensive opinion reversing its own precedent, which previously held that appointment of an agent for service of process conferred general jurisdiction over a foreign corporation,[18] the Delaware Supreme Court reconsidered Delaware's registration statute in light of the altered due process framework:

> Our duty is to construe a statute of our state in a manner consistent with the U.S. Constitution, when it is possible to do so with no violence to its plain meaning.  Nothing in the registration statutes explicitly says that a foreign corporation registering thereby consents to the personal jurisdiction of this state.  Nothing in the statutes explicitly says that by having to register in order to "do any business in this State, through or by branch offices, agents or representatives located in this State," and to appoint a registered agent in the state to receive service of process, that meant a foreign corporation was waiving any objection to personal jurisdiction for causes of action not arising out of the conduct in Delaware that gave rise to the registration requirement.
>
> In light of Daimler, [Delaware's registration statute] can be given a sensible reading by construing it as requiring a foreign corporation to allow service of process to be made upon it in a convenient way in

---

[18] See Sternberg v. O'Neil, 550 A.2d 1105 (Del. 1988).

19

proper cases, but not as a consent to general jurisdiction.

Genuine Parts Co. v. Cepec, 137 A.3d 123, 142 (Del. 2016) (footnotes omitted) (quoting Del. Code Ann. tit. 8, § 371(b)). In construing a Connecticut statute with language mirroring Wis. Stat. § 180.1510's, the Second Circuit similarly observed that

> [i]f mere registration and the accompanying appointment of an in-state agent——without an express consent to general jurisdiction——nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and Daimler's ruling would be robbed of meaning by a back-door thief.

Brown v. Lockheed Martin Corp., 814 F.3d 619, 640 (2d Cir. 2016).[19]

¶24 The shade of constitutional doubt that Goodyear and Daimler cast on broad approaches to general jurisdiction informs our assessment of this court's older cases. Ambac argues that State ex rel. Aetna Ins. Co. v. Fowler, 196 Wis. 451, 220 N.W. 534 (1928), stands for the proposition that "appointing a

---

[19] See also Wal-Mart Stores, Inc. v. LeMaire, ___ P.3d ___, ¶13, 2017 WL 1954809 (Ariz. Ct. App. 2017) ("Because the modern doctrine of specific jurisdiction amply ensures that a state has jurisdiction when a corporation's conduct allegedly causes harm in that state, there is no need to base personal jurisdiction solely upon a murky implication of consent to suit——for all purposes and in all cases——from the bare appointment of an agent for service."); State ex rel. Norfolk S. Ry. Co. v. Dolan, 512 S.W.3d 41, 46-47 (Mo. 2017) (en banc) ("The Supreme Court held [in Daimler] that the mere conduct of . . . systematic and continuous business activities in the state was not sufficient to subject the corporation to general jurisdiction in the state for all causes of action not related to that state.").

Wisconsin agent for service, without limiting the scope of such agency, subjected foreign corporations to <u>general personal jurisdiction</u>." The <u>Aetna</u> court held that

> foreign insurance corporations are bound [by statute] . . . to hold themselves amenable to the jurisdiction of our courts for a cause of action which may . . . be properly brought against them for a cause of action arising outside of this state . . . , [] though the cause of action may not affect the property of such insurance corporation.

196 Wis. at 457. The court cited <u>Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.</u>, 243 U.S. 93 (1917), in support of that holding. Importantly, the statute at issue in <u>Aetna</u> was interpreted to require <u>insurance</u> corporations to consent to jurisdiction by service of process on the insurance commissioner, which "clearly put[] the foreign insurance corporation[s] outside of the general foreign corporation statute." <u>Aetna</u>, 196 Wis. at 457. <u>Aetna</u> does not control our interpretation of Wisconsin's modern corporate registration statute because <u>Aetna</u> interpreted a statute regulating insurance corporations.

¶25 Significantly, the <u>Daimler</u> Court cautioned that "cases . . . decided in the era dominated by <u>Pennoyer's</u> territorial thinking should not attract heavy reliance today." 134 S. Ct. at 761 n.18 (citation omitted). Although the Supreme Court never expressly overruled the <u>Pennsylvania Fire</u> decision relied upon by the <u>Aetna</u> court,[20] both cases reflect the

---

[20] Recently, the Supreme Court specifically declined to discuss consent to general personal jurisdiction in <u>BNSF Ry. Co.</u>

(continued)

21

reasoning of an era when states could not exercise jurisdiction over a foreign corporation absent the appointment of an agent for service of process. Because Aetna and Pennsylvania Fire represent a disfavored approach to general jurisdiction, we instead give preference to prevailing due process standards when interpreting a contemporary statute for the first time.

¶26 Turning to this court's opinions in Punke and Hasley, we begin by observing that neither case interpreted the registered agent statute; therefore, like Aetna, they do not control our interpretation of Wis. Stat. § 180.1507. Furthermore, subjecting foreign corporations to general jurisdiction wherever they register an agent for service of process would reflect the "sprawling view of general jurisdiction" rejected by the Supreme Court in Goodyear. Daimler, 134 S. Ct. at 760 (quoting Goodyear, 564 U.S. at 929). Accordingly, Ambac's and the court of appeals' heavy reliance on language from these opinions is unfounded.

¶27 Importantly, Punke addressed whether an individual could consent to personal jurisdiction in Wisconsin by appointing an agent to accept service on his behalf. See Punke, 17 Wis. 2d at 13-14. But whether an individual consents to personal jurisdiction by appointing an agent presents a different question than whether a corporation's appointment of a registered agent——as required by law——automatically subjects the

v. Tyrrell, 137 S. Ct. 1549, 1559 (2017), because the court below had not addressed the issue.

22

corporation to general jurisdiction. We will not infer the existence of implied consent to general jurisdiction in Wisconsin's business corporations statutes from an opinion basing consent to personal jurisdiction on an individual's appointment of an agent to receive service of summons. Punke is inapposite to this case.

¶28 Hasley, on the other hand, did explore whether Wisconsin courts could exercise jurisdiction over a foreign corporation, but "[i]t [was] agreed between the parties that statutory personal jurisdiction over [the defendant] by the Wisconsin trial court would adhere only under the 'long-arm' statute." 70 Wis. 2d at 574. The court's analysis accordingly focused on whether the nature, quality, and extent of the defendant's contacts in Wisconsin satisfied the statutory basis for asserting specific jurisdiction without offending due process. Within the context of its due process analysis, the Hasley court only surmised that "a defendant entity might be subject to personal jurisdiction . . . by its consent evidenced by appointment of an agent for service of process." Id. at 582 (emphasis added). The Hasley court's examination of whether Wisconsin courts could exercise specific jurisdiction over the foreign corporation did not consider consent to jurisdiction via appointment of a registered agent or otherwise. Because consent to jurisdiction by appointment of a registered agent arose only as an aside when relaying International Shoe's rules governing personal jurisdiction over corporations——and then only as a possibility, rather than a certainty——Hasley does not control

23

our interpretation of Wis. Stat. § 180.1507. The court of appeals erred in determining otherwise, particularly in light of Daimler and Goodyear.

¶29 Ultimately, Aetna, Punke, and Hasley are unhelpful in determining whether Countrywide's compliance with Wis. Stat. § 180.1507 is tantamount to consent to general jurisdiction in Wisconsin. Notably, each of these cases predate the 1989 enactment of Chapter 180 and reflect outmoded jurisdictional approaches that should not be fused with modern statutes, particularly when such concepts are irreconcilable with the due process rights of corporate defendants. Absent express statutory language asserting general jurisdiction over a foreign corporation based on its appointment of an agent for service of process, we will not depart from the plain meaning of Wis. Stat. § 180.1507, which serves merely as a registration statute, not a conferral of consent to general jurisdiction.

¶30 Finally, we note that our holding does not bar the courtroom door to plaintiffs with claims against foreign corporations. Under the doctrine of specific jurisdiction, plaintiffs may seek relief from foreign corporations in Wisconsin courts when a nexus exists between the cause of action and the corporation's in-state activities. Indeed, we remand to the court of appeals to consider whether Wisconsin courts may exercise specific jurisdiction over Countrywide in this case. But the Fourteenth Amendment's Due Process Clause restricts the exercise of general jurisdiction over foreign corporations to those cases in which the nature of a foreign corporation's

24

operations render it "at home" in this state.   Because Countrywide is incorporated and maintains its principal place of business elsewhere, it is not "at home" in Wisconsin.

IV.   CONCLUSION

¶31  We hold that appointing a registered agent under Wis. Stat. § 180.1507 does not signify consent to general personal jurisdiction.   The statute's plain language does not mention jurisdiction, and Ambac's proffered deviation from the text would place the statute's constitutionality into doubt.   Foreign corporations principally operating outside of Wisconsin may rightly be subject to suit in our courts for claims arising out of their activities in this state, but the Supreme Court has made clear that the Due Process Clause proscribes the exercise of general jurisdiction over foreign corporations beyond exceptional circumstances not present here.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the court of appeals.

¶32  DANIEL KELLY, J., did not participate.

25

¶33 ANN WALSH BRADLEY, J.  (dissenting).  The majority's reasoning evinces a misunderstanding of the concept of consent to personal jurisdiction set forth both in Wisconsin statutes and case law.  Ambac, a Wisconsin plaintiff, filed a lawsuit in its home state against a foreign corporation that is registered to conduct business in Wisconsin and has assigned an agent to receive service of process here.

¶34 Countrywide, a foreign corporation, has used Chapter 180 of the Wisconsin Statutes to file over one hundred foreclosure lawsuits against Wisconsin homeowners in Wisconsin courts.  But now that the shoe is on the other foot, it contends that Wisconsin courts no longer have jurisdiction under that same chapter when lawsuits are filed against it.  And, a majority of this court agrees.

¶35 The majority concludes that "[b]ecause the text of [Wis. Stat.] § 180.1507 does not even mention jurisdiction, much less consent, Countrywide's compliance with the statute does not, on its own, confer jurisdiction."  Majority op., ¶1 (emphasis added).  This myopic lens through which the majority focuses gives rise to its folly.

¶36 I address two significant flaws upon which the majority rests it conclusion.  First, it employs a misguided framework of statutory interpretation by examining a statute "on its own."  Majority op., ¶1.  Individual statutes do not exist in isolation from the wider embrace of the statutory scheme.  They must be examined in context.  Second, the majority fails to recognize the distinction between cases where general personal

1

jurisdiction is conferred by consent and cases that looked instead to contacts with a forum state to establish such jurisdiction.

¶37 As did the court of appeals, I conclude that the circuit court has general personal jurisdiction over Countrywide in this action. Under Wisconsin's statutory scheme, Countrywide consented to personal jurisdiction in Wisconsin when it appointed a registered agent in order to accept service of process pursuant to Wis. Stat. §§ 180.1507 and 180.1510(1). Accordingly, I respectfully dissent.

I

¶38 At the center of the majority's plain language analysis lies its search for the words "consent" or "jurisdiction" in Wis. Stat. § 180.1507. Examining the statute in isolation, the majority contends that "[a]bsent express statutory language asserting general jurisdiction over a foreign corporation based on its appointment of an agent for service of process, we will not depart from the plain meaning of § 180.1507, which serves merely as a registration statute, not a conferral of consent to general jurisdiction." Majority op., ¶29.

¶39 Over and over, it repeats this plain language refrain. See, e.g., Majority op., ¶15 ("The text of Wis. Stat. § 180.1507 is devoid of any language regarding either consent or jurisdiction."); see also id. ("The language is straightforward, and none of the words—independently or taken together—suggest consent to jurisdiction."); Id., ¶20 ("Ambac disengages from the

2

plain language of Chapter 180. Like Wis. Stat. §§ 180.1507 and 180.1510(1), Wis. Stat. § 180.1505(2) mentions neither consent nor jurisdiction; thus, its plain language undermines Ambac's argument.").

¶40 Indeed, the absence of the words "consent" or "jurisdiction" proves to be a double-edged sword for the majority. True, Wis. Stat. § 180.1507 does not expressly state that consent to general personal jurisdiction is conferred. On the other hand, it does not expressly negate it either, as do some jurisdictions discussed below.[1]

¶41 By narrowing the scope of its search and focusing on each statute in isolation, the majority misses the proverbial forest for the trees. It is only by examining Wis. Stat. § 180.1507 in the context of the statutory scheme that we see the full picture and can discern its plain meaning. State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 ("[s]tatutory language is interpreted in the context in which it is used . . . in relation to the language of surrounding or closely-related statutes . . . .").

¶42 Chapter 180, Wisconsin's Business Corporations Law, governs foreign corporations conducting business in Wisconsin. The first statutory requirement relevant to this analysis is set forth in Wis. Stat. § 180.1501, which instructs that foreign corporations conducting business in Wisconsin must obtain a

---

[1] See infra, ¶18 n.8.

3

certificate of authority.[2]  If a foreign corporation does not obtain a certificate of authority, then it is unable to sue in Wisconsin courts.  Wis. Stat. § 180.1502(1).[3]

¶43  It is in this context that Wis. Stat. § 180.1507 requires that a foreign corporation "authorized to transact business in this state shall continuously maintain in this state a registered office and registered agent."  Pursuant to Wis. Stat. § 180.1510(1), a registered agent "is the foreign corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation."[4]  Even though neither § 180.1507 nor § 180.1510(1) expressly contain the words "consent" or "jurisdiction," when read together they plainly provide that when a foreign corporation has a registered agent, among its acknowledged functions is the receipt of the service of process (i.e. receipt of a summons and complaint).

---

[2] Wis. Stat. § 180.1501(1) provides: "A foreign corporation may not transact business in this state until it obtains a certificate of authority from the department."

[3] Wis. Stat. § 180.1502(1) provides: "A foreign corporation transacting business in this state without a certificate of authority, if a certificate of authority is required under s. 180.1501, may not maintain a proceeding in any court in this state until it obtains a certificate of authority."

[4] Wis. Stat. § 180.1510(1) provides: "Except as provided in subs. (2) and (3), the registered agent of a foreign corporation authorized to transact business in this state is the foreign corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation."

¶44  What reason exists for the appointment of a registered agent to receive service of a summons and complaint other than the purpose of being subject to a lawsuit?  The majority offers none.  When read together, the plain meaning of Wis. Stat. §§ 180.1507 and 180.1510(1) is that appointment of a registered agent to receive service of process constitutes consent to jurisdiction.

¶45  This plain meaning interpretation is further made manifest by examining Wis. Stat. § 180.1505(2), which is part of the statutory scheme.  It provides that once a foreign corporation obtains a certificate of authority, it is not only able to sue in Wisconsin courts, but is placed on equal footing with domestic corporations.  Pursuant to § 180.1505(2), a foreign corporation with a valid certificate of authority has the same privileges and duties as a domestic corporation:

> A foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and, except as otherwise provided by this chapter, is subject to the same duties, restrictions, penalties and liabilities now or later imposed on, a domestic corporation of like character.

Significantly, the duties of domestic corporations include being subject to general jurisdiction in Wisconsin.  Wis. Stat. § 801.05(1)(c).[5]

---

[5] Wis. Stat. § 180.05(1)(c) provides that: "A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances . . . [i]n any action whether arising within or without this state, against a defendant who when the action is commenced . . . [i]s a domestic corporation or limited liability company . . . ."

5

¶46 The legislative history further confirms this plain meaning interpretation. Drafting file for 1989 Wis. Act 303, Analysis by the Legislative Reference Bureau of 1989 A.B. 780, Legislative Reference Bureau, Madison, Wis. Prior to the adoption of the Wisconsin Business Corporation Act by the Wisconsin Legislature in 1989, the State Bar of Wisconsin established the Corporate and Business Law Committee to review and recommend to the Wisconsin Legislature revisions to Wisconsin's Business Corporations law. See Christopher S. Berry, Kenneth B. Davis, Jr., Frank C. DeGuire and Clay R. Williams, Wisconsin Business Corporation Law intro.-2 (State Bar of Wis. CLE Books 1992). In drafting the proposed revisions of the Business Corporations Law, the Wisconsin State Bar Committee selected appropriate provisions from the Revised Model Business Corporation Act.[6] Id. at intro.-3.

¶47 The selected provisions included § 15.07, upon which Wis. Stat. § 180.1507 is based. See Christopher S. Berry, Kenneth B. Davis, Jr., Frank C. DeGuire and Clay R. Williams, Wisconsin Business Corporation Law 15-30 to 15-31 (State Bar of Wis. CLE Books 1992). The Official Comment to § 15.07 of the Revised Model Business Corporation Act explains the rationale for requiring the appointment of a registered agent when a foreign corporation obtains a certificate of authority. It provides that: "[a] foreign corporation that obtains a certificate of authority in a state thereby agrees that it is

---

[6] Revised Model Business Corporations Act § 15.07 cmt. (Am. Bar Ass'n 1984).

6

amenable to suit in the state." Revised Model Business Corporations Act § 15.07 cmt. (Am. Bar Ass'n 1984). Thus, when the legislature enacted § 180.1507 in conformity with the Revised Model Business Corporation Act, it intended that a foreign corporation consent to jurisdiction when it complied with the registration statute.[7]

¶48 Finally, I observe that the majority's protestations that it will not rewrite the statute ring hollow. See Majority op., ¶15. That is exactly what the majority is doing here. It writes into the statute an interpretation never adopted by the Wisconsin Legislature.

¶49 The Model Registered Agent Act provides that "[t]he designation or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state." Model Registered Agents Act § 15 (Unif. L. Comm'n 2015).

---

[7] The legislative reference bureau's analysis to 1989 Assembly Bill 180 explained, "[m]any of the bill's provisions parallel the revised model business corporation act, as adopted in 1984 by the corporate laws committee of the American Bar Association." 1989 Assembly Bill 780, Analysis by the Legislative Reference Bureau ¶1 (LRB-1540/2); see also Fergus, Scott et al., The New Wisconsin Business Corporation Law, iii (1990) ("the overall goal of AB 780 was to provide as much uniformity as possible with the ABA Model Act.").

¶50 At least eleven jurisdictions have chosen to enact this Model Act limitation——but not Wisconsin.[8] Never mind, the majority has done it instead. Mimicking the words of the Model Act, the majority concludes "compliance with the statute [Wis. Stat. § 180.1507] does not, on its own, confer jurisdiction." Majority op., ¶1.

¶51 There is nothing in the text of Chapter 180 indicating that the legislature intended to limit Wisconsin's registration statute as a basis for general personal jurisdiction. Because there is no such statutory language limiting Wisconsin's registration requirement, the majority errs when it takes it upon itself to rewrite the statute in contravention of the actual language chosen by the legislature.

¶52 Pursuant to the statutory scheme set forth above, Countrywide not only obtained a certificate of authority, but it also appointed a registered agent and exercised its privilege to use Wisconsin courts. Accordingly, I conclude that Countrywide consented to personal jurisdiction in Wisconsin when it appointed a registered agent in order to accept service of process pursuant to Wis. Stat. §§ 180.1507 and 180.1510(1).

II

---

[8] See Ark. Code Ann. § 4-20-115 (2016); D.C. Code § 29-104.14 (2016); Idaho Code § 30-21-414 (2016); 2017 Ind. ALS 118, SECTION 12 (Apr. 21, 2017); Me. Stat. tit. 5, § 115 (2016); Miss. Code Ann. § 79-35-15(2016); Mont. Code Ann. § 35-7-115 (2017); Nev. Rev. Stat. § 77.440 (2016); N.D. Cent. Code § 10-01.1-15 (2015); S.D. Codified Laws § 59-11-21 (2015); Utah Code Ann. § 16-17-401 (2016).

¶53 In an attempt to support its "plain language" statutory interpretation, the majority relies heavily on United States Supreme Court precedent addressing jurisdiction over a non-consenting defendant. The majority's reasoning evinces a misunderstanding of the concept of consent to personal jurisdiction. In reaching its conclusion, the majority conflates two lines of United States Supreme Court cases that separately address personal jurisdiction over consenting and non-consenting defendants.

¶54 Central to the majority's analysis is the contention that the United States Supreme Court's decision in Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945), "dispensed with the 'purely fictional' notions of implied consent and presence-by-agent . . . ." Majority op., ¶10. In Int'l Shoe, the Supreme Court addressed personal jurisdiction under a long-arm statute. 326 U.S. 310 (1945). It concluded that due process requires that a defendant have certain minimum contacts in a forum in which it may be sued so as not to offend "traditional notions of fair play and substantial justice." Id. at 316 (quotation marks and quoted source omitted).

¶55 Likewise, the majority relies on Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) and Daimler AG v. Bauman, 134 S. Ct. 746, 759-60 (2014), which analyzed the due process implications of effecting general jurisdiction over non-consenting defendants. See Majority op., ¶22. In Daimler, the Supreme Court reasoned that a court may assert general jurisdiction over foreign corporations when "their affiliations

9

with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[9]  Daimler, 134 S. Ct. at 754 (quoting Goodyear, 564 U.S. at 919).

¶56 The majority errs, however, in failing to distinguish the above non-consensual cases with cases that have long-established consent as a basis for establishing personal jurisdiction over a foreign corporation.  Although the majority acknowledges that the Supreme Court has never overruled Pennsylvania Fire, it refuses to follow controlling precedent.[10]  Majority op., ¶25.

¶57 In Pennsylvania Fire Ins. Co. v. Gold Issue Mining and Milling Co., 243 U.S. 93 (1917), an Arizona corporation obtained a license to conduct business in Missouri and consented to service of process in the state in compliance with certain statutory requirements.  Id. at 94.  It asserted that consent to service of process was not sufficient to confer jurisdiction without violating the Fourteenth Amendment right to due process of law.  Id. at 94-95.  The Pennsylvania Fire court rejected

---

[9] The United States Supreme Court continues to revisit the issue of non-consenting personal jurisdiction, most recently in Bristol-Myers Squibb Co. v. Superior Ct. of Cal., 377 P.3d 874 (Cal. 2016), cert. granted, 137 S. Ct. 827 (2017).

[10] There are other jurisdictions that have similarly conflated these two lines of cases.  See e.g., Wal-Mart Stores, Inc. v. Lemaire, No. 1 CA-SA 17-0003 (Ariz. Ct. App. May 11, 2017).  However, still other recent decisions have concluded, as I do, that appointment of a registered agent constitutes consent to personal jurisdiction.  See, e.g., Senju Pharm. Co. v. Metrics, Inc., 96 F. Supp. 3d 428, 438-40 (D.N.J. 2015) (determining that Daimler "did not disturb the consent by-in-state service rule.").

this argument, explaining that "[t]he construction of the Missouri statute thus adopted hardly leaves a constitutional question open." Id. at 95. Accordingly, the Supreme Court unequivocally determined that registration under state business statutes is a voluntary act that leaves "no doubt of the jurisdiction of the state court."

¶58 The Supreme Court reaffirmed Pennsylvania Fire in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 175 (1939), concluding that where a corporation designated an agent for service of process in conformity with the General Corporation Law of New York, "service on the agent shall give jurisdiction of the person." Quoting Judge Cardozo, Neirbo explained that the appointment of a registered agent pursuant to a state statute is consent to a "true contract," where "[t]he contract deals with the jurisdiction of the person":

> The stipulation is, therefore, a true contract. The person designated is a true agent. The consent that he shall represent the corporation is a real consent . . . . The contract deals with jurisdiction of the person. It does not enlarge or diminish jurisdiction of subject-matter. It means that, whenever jurisdiction of the subject-matter is present, service on the agent shall give jurisdiction of the person.

Id. (quoting Bagdon v. Phila. & Reading Coal & Iron Co., 217 N.Y. 432, 436-37). Thus, Nierbo concluded that a statute calling for designation of a registered agent to accept service of process "is constitutional, and the designation of the agent 'a voluntary act.'" Id. (quoting Pa. Fire. Ins. Co., 243 U.S. at 96).

11

¶59 Additionally, the majority uses cases involving non-consenting defendants to overrule Wisconsin precedent regarding consenting defendants.  In <u>State ex rel. Aetna Ins. Co. v. Fowler</u>, 196 Wis. 451, 457, 220 N.W. 534 (1928), this court concluded that although the registration statute at issue never mentioned the word "jurisdiction," defendants were "bound by their acceptance of such license to hold themselves amenable to the jurisdiction of our courts."  Over the years, this basic understanding that appointment of a registered agent to accept service of process evinces consent to jurisdiction has been reaffirmed.  <u>See also</u>, <u>Punke v. Brody</u>, 17 Wis. 2d 9, 13-14, 115 N.W.2d 601 (1962); <u>Hasley v. Black, Sivalls & Bryson, Inc.</u>, 70 Wis. 2d 562, 582, N.W.2d 446 (1975).

¶60 In <u>Punke</u>, this court reaffirmed <u>Aetna</u>, reasoning that "[a] state can exercise through its courts jurisdiction over an individual who consents to such exercise of discretion." 17 Wis. 2d at 13 (quoting Restatement (First) of Conflict of Laws § 81 (1934)).  <u>Punke</u> explained appointment of a registered agent to receive service of process is considered consent to jurisdiction:

> The consent here considered as a basis of jurisdiction is actual assent to the exercise of jurisdiction. . . . Consent . . . may be given generally with respect to actions which may thereafter be brought. Illustrations:  A appoints an agent in state X and authorizes him to receive service of process in any action brought against A in a court of X.  B brings an action against A in a court of X and process is served upon the agent.  The court has jurisdiction over A.

<u>Id.</u>

12

¶61 Contrary to the majority's assertion, there is no rationale for limiting <u>Punke</u>'s reasoning to cases only where an individual, rather than a corporation, consents to jurisdiction. <u>See</u> majority op., ¶27. Indeed, the majority provides no support for the arbitrary distinction it draws here. This court's decision in <u>Punke</u> relied on the principles set forth in the Restatement of Conflict of Laws that apply to consent to personal jurisdiction.

¶62 Consistent with the rational of the Restatement relied on by <u>Punke</u>, the Second Restatement Conflict of Laws more recently explained that a state may exercise jurisdiction when a foreign corporation consents by appointing a registered agent for service of process:

> A state has power to exercise judicial jurisdiction over a foreign corporation which has authorized an agent or a public official to accept service of process in actions brought against the corporation in the state as to all causes of action to which the authority of the agent or official to accept service extends.

Restatement (Second) of Conflict of Laws § 44 (Am. Law Inst. 1970); <u>see also</u> <u>id.</u> § 43 cmt. B ("Most commonly . . . consent by a corporation takes the form of the appointment of a statutory agent to receive service of process in compliance with the statutory requirements of a state in which the corporation desires to do business.").

¶63 Likewise, in <u>Halsey</u>, this court again reaffirmed that consent by appointment of a registered agent for service of process is a basis for personal jurisdiction. 70 Wis. 2d at 582. <u>Halsey</u> differentiated between various bases for consent,

explaining that "a defendant entity might be subject to personal jurisdiction by its actual presence in a state via incorporation there, or by its consent evidenced by appointment of an agent for service of process, or by the presence evidenced in continual and substantial operations." Id. Thus, Halsey concluded that there would be no burden on due process by a forum's exercise of personal jurisdiction in such circumstances. Id.

¶64 According to the majority, however, "[t]he shade of constitutional doubt that Goodyear and Daimler cast on broad approaches to general jurisdiction informs our assessment of this court's older cases." Majority op., ¶24. The majority reasons that Pennsylvania Fire and Aetna reflect outdated reasoning and represent a disfavored approach to general jurisdiction. Majority op., ¶25. Thus, the majority asserts that "we instead give preference to prevailing due process standards . . . ." Id.

¶65 The majority fails to recognize that cases like Int'l Shoe and Daimler maintained a clear distinction between consenting and nonconsenting defendants. There is nothing outdated or disfavored about the approach taken in Pennsylvania Fire, Nierbo or Aetna. Instead, they address an entirely separate issue from the question presented in the cases relied on by the majority.

¶66 Int'l Shoe limited its analysis to cases where "no consent to be sued or authorization to an agent to accept service of process has been given." 326 U.S. at 317. This

14

distinction has been consistently recognized by the United States Supreme Court. See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (analyzing minimum contacts "[w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there"); Ins. Corp. of Ir. V. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 712-13 (1982) (describing Int'l Shoe as establishing that "'minimum contacts' represent[s] a constitutional prerequisite to the exercise of in personam jurisdiction over an unconsenting defendant"); Kopke v. A. Hartrodt S.R.L., 2001 WI 99, ¶22, 245 Wis. 2d 396, 629 N.W.2d 662 ("The Due Process Clause of the Fourteenth Amendment limits the exercise of jurisdiction by a state over a nonconsenting nonresident."). Likewise, Daimler distinguishes its analysis of contacts in a forum state from cases involving consent to jurisdiction. See Daimler, 134 S. Ct. at 755-65 (describing "the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.").

¶67  In both Int'l Shoe and Daimler, there is no mention of either Pennsylvania Fire or Neirbo, much less any indication that the Supreme Court intended to overrule those cases. Further, the rational in cases such as Int'l Shoe and Daimler is wholly consistent with the rule that a foreign corporation can

15

consent to personal jurisdiction by registering to do business in a state.[11]

¶68 Concerns justifying the narrowing scope of general jurisdiction are not present when a corporation voluntarily registers to do business and designates an agent in the state. For example, Daimler expressed concern that foreign corporations be able "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Daimler, 134 S. Ct. at 762 (quoting Burger King Corp. 471 U.S. at 472). However, when a foreign corporation voluntarily consents to jurisdiction by complying with a registration statute, there is no uncertainty that this conduct will subject it to general jurisdiction in that forum. These concerns are certainly not present in this case, where Countrywide has long enjoyed the privilege of using Wisconsin courts and in exchange consented to the general jurisdiction of these same courts.

¶69 The majority's failure to distinguish between cases involving consenting and non-consenting defendants pervades its analysis. For example, the majority analyzes Wis. Stat. § 180.1507 in the context of Wisconsin's long-arm statute,

---

[11] The United States Supreme Court continues to distinguish between consenting and non-consenting defendants. In BNSF Rwy. Co. v. Tyrrell, 137 S. Ct. 1549, 1558-60 (2017), it analyzed the railroad's minimum contacts with the forum state under Daimler. However, it recognized consent as a separate issue and specifically declined to address it. Id. at 1560.

16

rather than in the context of the statutory scheme where it is located. According to the majority, if Wis. Stat. §§ 180.1507 and 180.1510(2) were interpreted as effecting consent to general jurisdiction, then Wisconsin's long-arm statute would be rendered superfluous. Majority op., ¶17.

¶70 Wisconsin's long-arm statute, Wis. Stat. § 801.05(1)(d) gives Wisconsin courts personal jurisdiction over a defendant "engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." The majority asserts that if registration pursuant to Wis. Stat. § 180.1507 "were sufficient to expose foreign corporations to general, all-purpose jurisdiction of Wisconsin courts, the long-arm statute would effectively serve no purpose." Majority op., ¶17.

¶71 This argument is unpersuasive, however, because the long-arm statute does not provide an exclusive means by which Wisconsin courts can obtain personal jurisdiction. Where there is consent to jurisdiction, there is no need to establish jurisdiction under the long-arm statute. See Kohler Co. v. Wixen, 204 Wis. 2d 327, 336, 555 N.W.2d 640 (Ct. App. 1996) ("In Wisconsin, courts may obtain personal jurisdiction over a party through any one or more of the grounds stated in Wisconsin's long-arm statute or by consent.") (emphasis added).

¶72 In sum, I conclude that the circuit court has personal jurisdiction over Countrywide in this action. Accordingly, I respectfully dissent.

17

¶73 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.